Marva J. WILSON, Plaintiff,

v.

LEMINGTON HOME FOR THE AGED, a nonprofit corporation t/d/b/a Lemington, Defendant.

No. 99CV1893.

United States District Court, W.D. Pennsylvania.

June 25, 2001.

Margolis Edelstein, Attn Charles H Saul, Pittsburgh, PA, for plaintiff.

Tucker Arensberg, Attn Homer L Walton, Pittsburgh, PA, for defendant.

### *OPINION* and *ORDER OF COURT*

AMBROSE, District Judge.

### *SYNOPSIS*

Pending before the Court is Plaintiff's, Marva J. Wilson, Motion for Partial Summary Judgment as to Plaintiff's Family and Medical Leave Act ("FMLA") claims, 29 U.S.C. § 2601, *et seq.,* (Docket No. 13) and Defendant's, Lemington Home for the Aged ("Lemington"), Motion for Summary Judgment as to Plaintiff's FMLA and Americans with Disabilities Act ("ADA") claims, 42 U.S.C. § 12101, *et seq.* (Docket No. 15). After careful consideration of the submissions filed by both parties, I grant Plaintiff's Partial Motion and deny Defendant's Motion in its entirety.

### *OPINION*

### I. *FACTUAL BACKGROUND*

Defendant is a nursing home facility that, at all relevant times, employed approximately 145 people. *See,* Plaintiff's Exhibit 1.[1] In November of 1995, Plaintiff began working for Defendant as a clinical manager and in April of 1996, Plaintiff resigned. *See,* Depo. of Plaintiff, p. 24. Plaintiff was rehired on December 9, 1996, as the assistant director of nursing ("ADON"). *See,* Plaintiff's Depo., p. 27. On August 19, 1997, Plaintiff became the acting director of nursing. *Id.,* p. 31. In November of 1997, Defendant hired L. Parker Hall as the director of nursing ("DON").

On November 4, 1997, a strike occurred at Defendant's facility, and Plaintiff was

---

**1.** All exhibit referenced in this Opinion refer to the exhibit appended to Plaintiff's Motion for Partial Summary Judgment unless otherwise noted.

forced to work three consecutive shifts. *See,* Affidavit of Plaintiff, Exhibit 3, ¶ 7. During this time, Plaintiff was experiencing both physical and mental exhaustion. *See,* Affidavit of Stevenson, Exhibit 4, ¶ 11. She would cry openly at work before both employees and management. *Id.,* at ¶ 14. For example, Plaintiff would display her emotions to Florine Stevenson, who at the time was the manager in the area of admissions, medical records and marketing. Concerned about Plaintiff, Ms. Stevenson spoke to Dr. Marion Rodriguez, the Administrator for Defendant, about how Mel Causey, Executive Director for Defendant, and Ms. Hall were treating Plaintiff by overworking her "to the point of exhaustion" and how Plaintiff was becoming "increasingly depressed and despondent." *Id.,* at ¶ 19; *see,* Exhibit 17, p. 4.

After working a full shift on December 8, 1997, Plaintiff became physically ill with diarrhea. *See,* Exhibit 3, ¶ 11. Plaintiff's symptoms continued on December 9, 1997. As a result, she called into work and took a personal day. On December 10, 1997, her symptoms persisted and she called into work and spoke to Ms. Hall. She informed Ms. Hall that her condition "had regressed and that [she] was not only suffering from diarrhea, but also from vomiting and chest pain." *See,* Exhibit 3, ¶ 13. She also informed Ms. Hall that she was going to see her doctor, Dr. Maryellen Schroeder, on December 11, 1997. *Id.,* ¶ 14. Dr. Schroeder diagnosed Plaintiff as suffering from clinical depression and prescribed PROZAC and counseling. *See,* Plaintiff's Depo., p. 80; *see also,* Affidavit of Schroeder, Exhibit 8, ¶ 4. In addition, Dr. Schroeder advised Plaintiff to take a medical leave of absence from work until January 11, 1998. *See,* Exhibit 16.

After her doctor's appointment, Plaintiff called Ms. Hall to inform her that Dr. Schroeder advised her "to stay home from work until at least January 11, 1998." *See,* Exhibit, 3 ¶ 15. At that time, Plaintiff did not indicate her exact diagnosis to Ms. Hall. During this conversation, Plaintiff did not specifically mention that she was taking this time pursuant to the FMLA or that she was requesting medical leave as a reasonable accommodation pursuant to the ADA. Ms. Hall advised Plaintiff, *inter alia,* that she required a note from Plaintiff's doctor concerning Plaintiff's condition. *Id.,* ¶ 16; *see also,* Exhibit 15. Furthermore, it is undisputed that Plaintiff never received any written notice from Defendant regarding her obligations pursuant to the FMLA and Defendant's policies and procedures. *See,* Exhibit 3, ¶¶ 17–18.

On December 13, 1997, Plaintiff went to her office at Defendant's facility and retrieved personal and work related items out of fear that they may be stolen. *See,* Plaintiff's Depo., pp. 62–63.

On December 19, 1997, Kevin Jordan, Director of Human Resources for Defendant, called Plaintiff and verbally requested that she provide a medical certificate. *See,* Exhibit 3, ¶ 19. There is a dispute as to whether he mentioned the FMLA and the consequences of Plaintiff's failure to provide said certificate within a particular time frame. *See, id;* *see also,* Defendant's Brief in Support of its Motion, p. 4.

On December 22, 1997, Plaintiff had an appointment with Andrew Kolar, L.S.W., for the counseling prescribed by Dr. Schroeder. *See,* Exhibit 3, ¶ 21; *see also,* Exhibit 13. Plaintiff continued her counseling with Kolar until June 13, 1998, and continued with PROZAC beyond then. *See,* Plaintiff's Depo. pp. 126–29.

On December 25, 1997, Plaintiff suffered a severe panic attack, prompting Ms. Stevenson to call 911. *See,* Plaintiff's Depo. p. 58; *see also,* Exhibit 4, ¶ 26. Thereafter, Ms. Stevenson began to look after Plaintiff and organized the aid of other employees

of Defendant to assist her in cooking and bathing Plaintiff. *See,* Exhibit 4, ¶ 29; Affidavit of Lillie Lee, Exhibit 24, ¶ 13.

On December 26, 1997, Jordan called Plaintiff again and informed her that he and not received the medical certificate from her doctor. *See,* Plaintiff's Depo. p. 66. She explained to him that Dr. Schroeder was out of the office until Monday, December 30, 1997, and she could not get it until then. *Id.* On December 29, 1997, Plaintiff received a letter of termination from Defendant. *See,* Exhibit 15; *see also,* Exhibit 3, ¶ 26. The letter states as follows:

> On December 8, 1997, you called off sick. On December 11, 1997, you requested a leave of absence due to an unspecified illness. At that time, MS. L. Parker–Hall (Director of Nursing) informed you that you had to submit your medical certification by no later than the close of business on Friday, December 26, 1997, which you failed to do.
>
> Pursuant to Lemington's FMLA policy, you were given 15 days to provide the requested medical certification in order to be granted a medical leave. Since you have failed to provide the requested medical certification within the 15 day period, your request for medical leave has been denied.
>
> Because of your failure to cooperate by providing the requested medical certification and your removal of both personal and work-related items from your office while off, Lemington has deemed you to have voluntarily quit your employment effective today, Monday, December 29, 1997.
>
> You must therefore, return any keys, badges and any other property belonging to Lemington Center to me immediately. Lemington will send your per-

sonal belongings, if any that remain on its premises, to you shortly.

*Id.*

On December 30, 1997, Plaintiff was seen by Dr. Schroeder. Dr. Schroeder wrote a letter to Jordan informing him that she advised Plaintiff to take a medical leave of absence until January 11, 1998, at which time she would need to be reevaluated. *See,* Exhibit 16. At that time, Plaintiff was only slightly better, so Dr. Schroeder continued to prescribe the Prozac and counseling. *See,* Affidavit of Dr. Schroeder, ¶ 5. Plaintiff was reevaluated by Dr. Schroeder on January 20, 1998. *See,* Affidavit of Dr. Schroeder, ¶ 6. Plaintiff was doing better, but Dr. Schroeder recommended that she remain off work for at least another eight weeks and continued treating her with Prozac for at least the next six months. *Id.* Plaintiff's Prozac was increased to 30 mg on March 2, 1998. *Id.,* ¶ 7. As of February 2, 2001, Plaintiff has continued to take Prozac and her depression is ongoing. *See,* Affidavit of Dr. Lawrence Glanz, Exhibit 21.

On November 22, 1999, Plaintiff filed a three count Complaint against Defendant. *See,* Complaint. The first two counts are brought pursuant to the FMLA. Count I asserts a cause of action for violation of the FMLA for denying her medical leave. Count II asserts a cause of action for retaliation for taking the medical leave she requested. The third count asserts a cause of action pursuant to the ADA.

Initially, Plaintiff filed a Motion for Partial Summary Judgment as to her two FMLA counts. *See,* Docket No. 13. Defendant has cross filed a Motion for Summary Judgment as to Plaintiff's FMLA counts and has further filed a Motion for Summary Judgment as to Plaintiff's ADA claim. *See,* Docket No. 15. Plaintiff opposes Defendant's Motion for Summary

Judgment.[2] *See*, Docket No. 20. Thereafter, Defendant sought leave of court to file a reply brief on the issue of damages. I granted leave of court on February 13, 2001, and on February 16, 2001, Defendant filed its Reply Brief. *See*, Docket No. 23.

## II. *LEGAL ANALYSIS*

### A. *Standard of Review*

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. FedR.Civ.P. 56(c). A fact is material when it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56 mandates the entry of judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *Anderson*, 477

U.S. at 248, 106 S.Ct. 2505. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir.1988), *quoting Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

### B. *FMLA*

In 1993, Congress enacted the FMLA "to balance the demands of the workplace with the needs of families, ... [and] to entitle [eligible] employees to take reasonable leave for [certain] medical reasons." 29 U.S.C. § 2601. For example, the FMLA provides, *inter alia*, that "an eligible employee shall be entitled to a total of 12 work weeks of leave during any 12 month period ... (D) [b]ecause of a serious health condition...." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is defined as an "illness, injury, impairment, or physical or mental condition"

---

**2.** Plaintiff's in Opposition to Defendant's Motion for Summary Judgment exceeds the pages limitation set by this Court for briefs. *See*, Chambers' Rule No. 2. Pursuant to Chamber Rule No. 2, briefs in support of and in opposition to dispositive motions are not to exceed twenty (20) pages in length. *Id.* Defendant has not raised issue with Plaintiff's violation of Chamber Rule No. 2. As a result, I will consider the entirety of Plaintiff's Brief in Opposition. Closer attention to Chamber Rules, however, is advised for the future.

that involves: either (1) inpatient care; or (2) continuing treatment by a healthcare provider. 29 C.F.R. § 825.114(a). The parties do not dispute that Plaintiff is an "eligible employee" that worked for Defendant, a qualifying employer. *See, id; see also,* 29 U.S.C. § 2611(4).

When leave is required for the serious health condition of the employee, the employee may take intermittent or reduced leave. 29 U.S.C. § 2612(b). After a period of qualified leave, an employee is entitled to reinstatement to the former position or an equivalent one with the same benefits and terms. 29 U.S.C. § 2614(a). The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" in the FMLA. 29 U.S.C. § 2615(a)(1). The FMLA similarly declares it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" under the FMLA. 29 U.S.C. § 2615(a)(2). Thus, an employer who interferes with an employee's exercise of rights, or retaliates for the exercise of the same, is in violation of the FMLA and the employee may bring a civil action against the employer for said violations. 29 U.S.C. §§ 2615(a), 2617(a). Plaintiff asserts that Defendant violated both sections of the FMLA.

### 1. *Violation of FMLA—Count I*

Count I of Plaintiff's Complaint alleges that Defendant improperly interfered with her right to take medical leave pursuant to 29 U.S.C. § 2615(a)(1). Specifically, § 2615(a)(1) provides:

> It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

Defendant asserts that it is entitled to summary judgment as to Count I of Plain-

tiff's Complaint because: (1) Plaintiff failed to provide it with enough information to place it on notice that she was entitled to FMLA leave, (2) it met its obligation of providing Plaintiff with written notice of what was required in a physician certification for FMLA leave in its employee handbook; and (3) Plaintiff cannot prove any damages. I will deal with each argument in turn.

### a. An employee's notice obligation under the FMLA

Pursuant to the regulations, an employee must provide her employer with notice that she needs FMLA leave. 29 C.F.R. § 825.302. If the leave is foreseeable, the employee must provide at least 30 days notice. *Id.* If 30 days notice is not practicable, notice must be given "as soon as practicable." 29 C.F.R. § 825.302(a); § 825.303(a). "As soon as practicable" is defined as "both possible and practical, taking into account all of the facts and circumstances in the individual case," but usually within 1 –2 business days of when the need for leave becomes known. 29 C.F.R. § 825.302(b). Specifically:

> The employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed . . .

29 C.F.R. § 825.302(c); *see also,* § 825.303(b) (stating virtually the same standard in cases of unforeseeable leave).

▮ In this case, after working a full shift on December 8, 1997, Plaintiff became physically ill with diarrhea. *See,* Exhibit 3, ¶ 11. Plaintiff's symptoms continued on December 9, 1997. As a result, she called into to work and took a personal

day. On December 10, 1997, her symptoms persisted and she called into work and spoke to Ms. Hall. She informed Ms. Hall that her condition "had regressed and that [she] was not only suffering from diarrhea, but also from vomiting and chest pain." *See,* Exhibit 3, ¶ 13. She also Informed Ms. Hall that she was going to see her doctor, Dr. Maryellen Schroeder, on December 11, 1997. *Id.,* ¶ 14. After her doctor's appointment, Plaintiff called Ms. Hall to inform her that Dr. Schroeder advised her "to stay home from work until at least January 11, 1998." *See,* Exhibit, 3 ¶ 15. At that time, Plaintiff did not indicate her exact diagnosis to Ms. Hall.

During the December 11, 1997 conversation, Plaintiff never mentioned that she was taking this time pursuant to the FMLA. Pursuant to the regulations, however, "[t]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed ..." for a medical reason. 29 C.F.R. § 825.302(c). This is exactly what happened in this case. There is no dispute that on the very day she was told to take a medical leave of absence from her doctor, Plaintiff verbally informed Defendant, through Ms. Hall, that for medical reasons her doctor advised her "to stay home from work until at least January 11, 1998." *See,* Exhibit, 3 ¶ 15. In fact, Defendant admitted the same in its letter to Plaintiff on December 30, 1997, wherein Mr. Jordan states that "[o]n December 11, 1997, you requested a leave of absence...." *See,* Exhibit 15. Defendant argues that this notice was insufficient to put it on notice that Plaintiff was requesting FMLA leave. I disagree and find this argument to be disingenuous. According to Defendant's letter of December 30, 1997, Ms. Hall advised Plaintiff, *inter alia,* that she required a medical certification within 15 days, in other words by the close of business on Friday, December 26, 1997.

If Plaintiff had not given enough information to Defendant to put it on notice, then it would not have had enough knowledge to ask for a medical certification in compliance with its own FMLA policy during the same conversation on December 11, 1997. *See,* Exhibit 18; *see also,* Exhibit 15. In addition, Jordan would not have had enough information to verbally request medical certification on two later dates: December 19, 1997 and December 26, 1997. *See,* Exhibit 3, ¶¶ 19, 23.

Moreover, Defendant's argument that the illness was unspecified is also of little merit. The regulations provide that if the employer needs more information to assess whether FMLA leave is being requested or any other ambiguity in the employee's request for leave, the burden shifts to the employer to determine if the leave requested is FMLA qualifying by Inquiring further. 29 C.F.R. § 825.302(c); § 825.303(b). Thus, the fact that Plaintiff had a serious medical illness, which is unchallenged by Defendant, is sufficient to put Defendant on notice. If it needed further information it could inquire further (which it attempted to do). Therefore, I find that there is no genuine issue of material fact that Plaintiff met her obligation of notifying Defendant as soon as practicable that medical leave was required.

**b. An employer's notice obligation under the FMLA**

█ Once an employee gives notice to an employer that FMLA leave is requested, the employer is charged with the duty to "provide the employee with **written** notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." 29 C.F.R. § 825.301(b)(1) (emphasis added). The Regulations are very clear on what must be provided in the written notice. *Id.*

While the written notice may include additional information, it must specifically include the following:

(i) that the leave will be counted against the employee's annual FMLA leave entitlement;

(ii) any requirements for the employee to furnish medical certification of a serious health condition and the consequences of failing to do so;

(iii) the employee's right to substitute paid leave and whether the employer will require the substitution of paid leave, and the conditions related to any substitution;

(iv) any requirement for the employee to make any premium payments to maintain health benefits and the arrangements for making such payments, and the possible consequences of failure to make such payments on a timely basis;

(v) any requirement for the employee to present a fitness-for-duty certificate to be restored to employment;

(vi) the employee's status as a "key employee" and the potential consequences that restoration may be denied following FMLA leave, explaining the conditions required for such denial;

(vii) the employee's right to restoration to the same or an equivalent job upon return from leave; and

(viii) the employee's potential liability for payment of health insurance premiums paid by the employer during the employee's unpaid FMLA leave if the employee fails to return to work after taking FMLA leave.

29 C.F.R. § 825.302(b)(1) and (2). Said notice must be given within one or two business days after notice of the need for leave is given. "If the employer fails to provide notice in accordance with the provisions of this section, the employer may not take action against the employee for failure to comply with any provision required to be set forth in the notice." 29 C.F.R. § 825.302(f).

 In this case, Defendant deemed Plaintiff to have voluntarily quit her employment with Defendant for failing to comply with its FMLA policy of providing a medical certification, and thus, demanded that she return any keys, badges or other property belonging to Defendant immediately. *See*, Exhibit 15. To be able to take said action, Defendant must have complied with § 825.301. There is no dispute that Defendant did not provide Plaintiff with any written notification detailing the specific expectations and obligations or explaining any consequences of a failure to meet these obligations pursuant to 29 C.F.R. § 825.301(b)(1). Defendant argues, however, that its employee handbook which outlines employees' leave rights was provided to Plaintiff. Therefore, Defendant argues that the handbook, alone, is sufficient to meet its obligations. I disagree.

To begin with, the cases cited by Defendant do not support the proposition that an employee handbook, alone, is sufficient to meet an employer's FMLA obligations. *See, Stubl v. T.A. Systems, Inc.*, 984 F.Supp. 1075, 1087 (E.D.Mich.1997); *Dodgens v. Kent Manuf. Co.*, 955 F.Supp. 560, 564–65 (D.S.C.1997); *Zawadowicz v. CVS Corp.*, 99 F.Supp.2d 518, 527 n. 7 (D.N.J. 2000). In fact, none of the cases states or even insinuates that an employee handbook, alone, is sufficient to meet an employer's FMLA obligations.

Moreover, the regulations are clear and specifically provide that if an employer

places any written guidance to its employees concerning its leave rights, then FMLA entitlements and obligations must be provided therein. 29 C.F.R. § 825.301(a)(1). Section 825.301(b)(1) further states that "[t]he employer **shall also** provide the employee with **written *notice*** detailing the specific expectations and obligations...." 29 C.F.R. § 825.301(b)(1) (emphasis added). Thus, the written notice is in addition to any employer handbook.

Contrary to Defendant's suggestions, § 825.301(c) does not alter this requirement. Instead, § 825.301(c) sets forth the timing of when the written notification must be provided (within 1–2 business days after notice is given), and then further specifies when additional notice is needed (i.e. when the policy changes during a subsequent period of FMLA leave or each time leave is requested and the employer requires a medical certification, unless the initial notice **and** the employer handbook clearly provided that certification would be required). 29 C.F.R. § 825.301(c)(1)–(2)(ii). While Plaintiff was provided with an employee handbook that outlines Defendant's FMLA policy, no initial written notice was provided in compliance with § 825.301(b).

Furthermore, Defendant's argument that Plaintiff was aware of its policies because Plaintiff was the Acting DON is irrelevant. The statute and regulations regarding the same do not treat management personnel, who under Defendant's theory have a greater knowledge of internal FMLA policies than non-managerial employees, any different from non-managerial employees. Since Defendant failed to provide Plaintiff with the written notice required by the FMLA, Defendant was not permitted to take action against Plaintiff for failure to provide the same. 29 C.F.R. § 825.302(f). As 29 C.F.R. § 825.220(b)

states, a violation of the FMLA constitutes interference with FMLA rights. Thus, Defendant's act of deeming Plaintiff to have quit on December 30, 1997, for the failure to provide a medical certification, constituted in interference with Plaintiff's exercise of her FMLA rights, in violation of 29 U.S.C. § 2615(a)(1).

Consequently, there is no genuine issue of material fact that Defendant violated the FMLA. 29 C.F.R. § 825.301(f). Therefore, Plaintiff is entitled to judgment as a matter of law with regard to Count I of her Complaint. As a result, Defendant's Motion for Summary Judgment as to Count I is denied and Plaintiff's Motion for Summary Judgment as to Count I is granted.

## 2. *Retaliation in violation of FMLA—Count II*

Count II of Plaintiff's Complaint alleges that Defendant fired her in retaliation for exercising her rights in taking medical leave in violation of 29 U.S.C. § 2615(a)(2). Specifically, § 2615(a)(2) provides:

> It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

In analyzing claims made for retaliation under the FMLA, courts look to the legal framework established for Title VII claims. *Leung v. SHK Management, Inc.,* 1999 WL 1240961, *13, No. CIV. A. 98–3337 (E.D.Pa. Dec. 21, 1999). Thus, a plaintiff may prove FMLA retaliation by direct evidence as set forth in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–46, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) or indirectly through the burden shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973). *Id.* at *13; *Baltuskonis v. U.S. Airways, Inc.*, 60 F.Supp.2d 445, 448 (E.D.Pa.1999), *citing Churchill v. Star Enterprises*, 183 F.3d 184 (3d Cir.1999).

■ Defendant urges that Plaintiff must prosecute her case under the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), because it believes the record is devoid of any direct evidence of retaliation. *See*, Brief in Opposition, p. 9. Plaintiff, on the other hand, suggests that there is direct evidence of retaliation, and therefore, there is no need to do a burden shifting analysis. I agree with Plaintiff.

To establish impermissible discrimination through direct evidence, the plaintiff must provide evidence that is "so revealing of discriminatory animus" that it proves the existence of discrimination without inference or presumption. *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778–79 (3d Cir.1994). Plaintiff's evidence must show that "decision makers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Id., citing Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. 1775 (O'Connor, J., concurring in the judgment). If the plaintiff does provide such evidence, the defendant must rebut it by proving that even if the discrimination was a "motivating factor" in the adverse employment decision, the defendant would have made the same employment decision regardless of its discriminatory animus. *Armbruster*, 32 F.3d at 779.

Here, the letter of termination explicitly provides a reason deeming Plaintiff to have voluntarily quit: Plaintiff failed to provide the requisite medical certification pursuant to Defendant's FMLA policy. *See*, Exhibit 15. As set forth above, this reason is in violation of Plaintiff's FMLA rights. Accordingly, there is direct and conclusive evidence that Defendant's deci-

sion was based on an impermissive consideration—impermissive consideration—the failure to provide a medical certification. *See*, 29 C.F.R. § 825.301(b)(1). Given this direct evidence, I do not believe that a reasonable jury could find that Defendant would have taken the same action absent the impermissive consideration. Therefore, I conclude that there is no genuine issue of material fact that the letter of December 30, 1997, was "so revealing of discriminatory animus" in violation of 29 U.S.C. § 2655(a)(2). Thus, Plaintiff is entitled to judgment as a matter of law as to Count II—Plaintiff's retaliation claim.

■ I would reach this conclusion even if I were to perform a burden shifting analysis under *McDonald Douglas*. Under a burden shifting analysis, to prove a *prima facie* case for retaliation, a plaintiff must demonstrate that: (1) he is protected under the FMLA; (2) he suffered an adverse employment action; and (3) that a causal connection exists between the adverse employment action and the plaintiff's exercise of his rights under the FMLA. *See, Baltuskonis*, 60 F.Supp.2d at 448. In this case, Defendant does not dispute that Plaintiff can satisfy the first two elements of a *prima facie* case. *See*, Brief in Opposition, p. 10. I agree that Plaintiff has proven that she is protected under the FMLA, and that she was deemed to have quit. Defendant, however, suggests that a causal connection is lacking. I disagree. A causal connection exists between the December 30, 1997, letter deeming Plaintiff to have quit and Plaintiff's exercise of her rights under the FMLA by mere virtue of temporal proximity. *Id.* at 448 (sheer proximity in time between FMLA leave and the adverse action establishes the necessary causal connection).

Since I find that Plaintiff has satisfied her initial burden, the burden shifts to Defendant. Defendant must proffer a le-

gitimate, nondiscriminatory reason for firing Plaintiff. *Woodson,* 109 F.3d at 920 n. 2; *see also, Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir.1997). "The employer's burden at this stage is 'relatively light: it is satisfied if the defendant articulates any legitimate reason for the adverse employment action; the defendant need not prove that the articulated reason actually motivated the action.'" *Krouse,* 126 F.3d at 500–01, *quoting, Woodson,* 109 F.3d at 920. Defendant argues that one of its reasons for deeming Plaintiff to have quit is that she removed all personal items from her office on December 13, 1997. *See,* Exhibit 15. Assuming that Defendant discharges this burden based on its proffered explanation, the burden then shifts back to Plaintiff to establish that the proffered explanation is mere pretext for discrimination. In other words, "the plaintiff must be able to convince the fact finder both that the employer's proffered explanation was false, and that the retaliation was the real reason for the adverse employment action." *Krouse,* 126 F.3d at 501, *citing Woodson,* 109 F.3d at 920. Accordingly, the employee, must produce evidence that the "retaliatory animus played a role in the employer's decision making process and that it had a determinative effect on the outcome of that process." *Krouse,* 126 F.3d at 501, *citing Woodson,* 109 F.3d at 931–35.

Here, Defendant argues that Plaintiff cannot adduce evidence sufficient to permit a reasonable jury to conclude that its proffered reason for deeming Plaintiff to have quit was not the true reason. To succeed on this element of the burden shifting test, a plaintiff must now point to evidence from which a reasonable fact finder could conclude either: (1) that the employer's articulated legitimate reasons are unworthy of belief (i.e. pretextual), or (2) that unlawful discrimination "was more likely than not a motivating or determina-

tive cause of the adverse employment action." *Fuentes,* 32 F.3d at 764; *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061 (3d Cir.1996), *cert. denied,* 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997). Defendant only focuses on pretext. To prove a pretext:

> [T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them "unworthy of credence" ... and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons" ....

*Fuentes,* 32 F.3d at 765 (citations omitted).

In this case, Plaintiff provides compelling evidence that the proffered reason of quitting was a pretext. For example, Plaintiff suggests that the argument that Defendant thought she quit by virtue of the removal of her items on December 13, 1997, is totally contradicted by the evidence. Specifically, Jordan called Plaintiff on December 19 and 26, 1997, and asked her for a medical certification. *See,* Exhibit 3. If Defendant believed Plaintiff had quit on December 13, 1997, there would no longer be any need for a medical certification on December 26, 1997. Thus, there would have been no need for Jordan to call Plaintiff and request the same. In addition, Defendant's December 29, 1997, letter states that Defendant is deeming Plaintiff to have voluntarily quit her employment "effective" on December 29, 1997, "because of [her] failure to cooperate by providing the requested medical certification...." *See,* Exhibit 15. When this evidence is viewed as a whole, I believe that a reasonable fact finder could only conclude that the articulated reasons for deeming Plaintiff to have quit (since she

removed items from her office space) is anything but a pretext for retaliation.

When Defendant deemed Plaintiff to have quit on December 30, 1997, for asserting an FMLA right, Defendant thereby retaliated against her in violation of the FMLA. 29 U.S.C. § 2615(a)(2). Consequently, Defendant's Motion for Summary Judgment is denied as to Count II and Plaintiff's Motion for Summary Judgment is granted with respect to Count II—Plaintiff's retaliation claim.

### 3. *Damages under the FMLA*

■ As a final FMLA argument, Defendant asserts that it is entitled to summary judgment as to Counts I and II because the record reveals that Plaintiff has suffered inconsequential damages, in the amount of $354.00, as a result of Defendant's alleged FMLA violation. I am not persuaded by this argument.

To begin with, Defendant admits that Plaintiff is entitled to some amount of damages, $354.00. Furthermore, pursuant to the statute, an employer who is in violation of § 2615 shall be liable to the employee in the amount of wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation, interest on said amounts, as well as liquidated damages. 29 U.S.C. § 2617(a)(1)(A). In addition, a court may award such equitable relief such as employment, reinstatement, and promotion. 29 U.S.C. § 2617(a)(1)(B). In addition to any judgment awarded to a plaintiff, I may allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action. 29 U.S.C. § 2617(a)(3). Defendant's calculations, assuming they are accurate (which I am not deciding at this point), fail to take into consideration employment benefits, or other compensation denied and/or lost to such employee by reason of the violation, inter-

est on said amounts, as well as liquidated damages. 29 U.S.C. § 2617(a)(1)(A). Moreover, I may determine that an attorney's fee, expert fee or other costs is appropriate. As a result, there remains a genuine issue as to the amount of damages recoverable by Plaintiff for Defendant's violations of 29 U.S.C. § 2615(a)(1) and (a)(2). Thus, Defendant's Motion for Summary Judgment as to Counts I and II are denied.

### C. *ADA—Count III*

Count III of Plaintiff's Complaint asserts a cause of action for violation of the ADA. *See,* Complaint. "Congress enacted the ADA in 1990 as an effort to prevent otherwise qualified individuals from being discriminated against in employment based on a disability." *Gaul v. Lucent Technologies, Inc.,* 134 F.3d 576, 579 (3d Cir.1998), *see,* 29 C.F.R. Pt. 1630. Pursuant to the ADA, an employer is prohibited from discriminating "against a qualified individual with a disability because of the disability of such individual with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C § 12112(a). Discrimination encompasses not only "adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor v. Phoenixville School District,* 184 F.3d 296, 306 (3d Cir.1999). The ADA states that an employer discriminates against an employee when he "does not mak[e] reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would im-

pose an undue hardship...." 42 U.S.C. § 12112(b)(5)(A).

In light of the standards imposed by the ADA, it is well-settled that for a plaintiff to establish a *prima facie* case of discrimination under the ADA, he must show:

1. He is a disabled person within the meaning of the ADA;

2. He is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and

3. He has suffered an otherwise adverse employment decision as a result of discrimination.

*Gaul,* 134 F.3d at 580, *citing Shiring v. Runyon,* 90 F.3d 827, 831 (3d Cir.1996); *Deane v. Pocono Medical Center,* 142 F.3d 138, 142 (3d Cir.1998). The failure to establish even one of these elements is grounds for summary judgment. *See, Gaul,* 134 F.3d at 580. Defendant asserts that Plaintiff cannot meet the burden of proving the first two elements. For the reasons set forth below, I disagree.

**1. Disabled within the meaning of the ADA**

■ The first element the Plaintiff must prove is that she is disabled within the meaning of the ADA. A person is disabled within the meaning of the ADA if she:

(A) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) has a record of such an impairment; or

(C) is regarded as having such an impairment.

*See,* 42 U.S.C. § 12102(2). If Plaintiff meets any of the above definitions for dis-abled persons, I will continue with my analysis to discuss whether Plaintiff made a request for reasonable accommodations. If, on the other hand, Plaintiff fails to meet any of the definitions, Plaintiff is not covered by the ADA and summary judgment will be appropriate. *Id.* I will address each definition seriatim, as is necessary.

**a. *Physical or mental impairment that substantially limits one or more of the major life activities***

■ The first definition of disabled provides that an individual will be considered disabled within the meaning of the ADA if she has a physical or mental impairment that substantially limits one or more of her major life activities. *See,* 42 U.S.C. § 12102(2)(A). The impairment at issue in this case is depression. Depression may qualify as impairments for purposes of the ADA. *See, e.g., Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1132 (11th Cir.1996), *amended on reh'g,* 102 F.3d 1118 (11th Cir.1996) (stating that depression has been held to constitute mental impairment); *Duda v. Board of Educ.,* 133 F.3d 1054, 1059 (7th Cir.1998) (recognizing manic depression as disability under ADA); *Den Hartog v. Wasatch Academy,* 129 F.3d 1076, 1081 (10th Cir.1997) (recognizing bi-polar disorder as mental disability covered under ADA); *Doe v. Region 13 Mental Health—Mental Retardation Comm'n,* 704 F.2d 1402, 1408 (5th Cir.1983) (recognizing depression as handicap under section 504 of Rehabilitation Act of 1973) [3]; *Olson v. General Elec. Astrospace,* 966 F.Supp. 312, 316 (D.N.J.1997) (recognizing depression as disability under ADA); *Stradley v. Lafourche Communications, Inc.,* 869 F.Supp. 442, 443 (E.D.La.1994) (same); *Sarko v. Penn–Del Directory Co.,*

---

**3.** Doe involved the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.,* but Congress intended for courts to rely on Rehabilitation Act cases when interpreting similar language in the ADA. 29 C.F.R. §§ 1630.2(g) & (m).

968 F.Supp. 1026, 1035 (E.D.Pa.1997). Defendant asserts, however, that Plaintiff's depression was only temporary and of limited duration. Therefore, Defendant submits that Plaintiff's mental impairment does not qualify under the ADA. *See,* 29 C.F.R. § 1630.2(j).

In opposition, Plaintiff has produced the medical expert report of Dr. Glanz dated February 22, 2001. *See,* Exhibit 22. Therein, Dr. Glanz concludes Plaintiff has been suffering and continues to suffer from depression with continued problems with concentration. *Id.* Therefore, I find there is a genuine issue as to whether Plaintiff's depression qualifies as an impairment for purposes of the ADA.

Determining whether an impairment exists is only the first step in determining whether an individual is disabled. To meet the level of a disability pursuant to the ADA, the impairment must substantially limit one of the individual's major life activities. 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(g)(1). An activity is "substantially limited" if the party is:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a major life activity as compared to the condition, manner or duration under which the average person in the general population

can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1); *Kelly v. Drexel Univ.,* 94 F.3d 102, 105 (3d Cir.1996). "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *Bragdon v. Abbott,* 524 U.S. 624, 638–39, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). In this case, Defendant takes issue with whether depression limits Plaintiff's major life activity of working.[4]

"Substantially limited" in the sense of working means, at a minimum, that he is "unable to work in a broad class of jobs."[5] *Sutton,* 527 U.S. at 491, 119 S.Ct. 2139; *see also, Tice v. Centre Area Trans. Auth.,* 247 F.3d 506, 514 (3d Cir.2001). In other words, "[t]o be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job choice." *Sutton,* 527 U.S. at 492, 119 S.Ct. 2139; *see also Deane v. Pocono Med. Ctr.,* 142 F.3d 138, 144 n. 7 (3d Cir.1998). The Supreme Court further stated that, "[i]f jobs utilizing an individual's skills ... are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." *Sutton,* 527 U.S. at 492, 119 S.Ct. 2139; *see,* 29 C.F.R. § 1630.2(j)(3)(i) (a person must be "signifi-

---

**4.** Plaintiff suggests that her depression also limited her major life activity of sleeping, concentrating, and caring for herself. *See,* Brief in Opposition, p. 16–17. Defendant only takes issue with whether Plaintiff's depression limited her major life activity of working. *See,* Brief in Support, p. 14. Since I have determined that there remains a genuine issue of whether Plaintiff's depression limited her major life activity of working, I need not determine if Plaintiff's disruption to her sleep and concentrating abilities qualify as

major life activities within the meaning of the ADA.

**5.** Although the United States Supreme Court recently called into question whether working is a major life activity, *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (dicta), neither party has raised the issue here. Accordingly, I will accept for the purposes of this motion that it is.

cantly restricted" in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities; the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working).

Defendant asserts that Plaintiff is not "substantially limited" because Plaintiff cannot prove that her depression prevented her from working at a broad class of potential jobs for a person with her skills and training. Instead, Defendant asserts that Plaintiff is only able to prove that she is unable to work for Defendant, and that under the law, this is not sufficient. Initially, I agree with Defendant that Plaintiff's depression is not substantially limiting if it merely prevents her from working at a particular job. *Sutton,* 527 U.S. at 492, 119 S.Ct. 2139. I disagree with Defendant, however, that Plaintiff has not provided this Court with sufficient evidence to create a genuine issue regarding whether her disability was "substantially limiting" within the meaning of the ADA. *See, Aldrich v. Boeing Co.,* 146 F.3d 1265, 1270 (10th Cir.1998) (an impairment need not be permanent to rise to the level of a disability, it may be sufficient if it is expected to last several months).

In opposition to Defendant's Motion, Plaintiff proffered the expert report of Dr. Glanz dated February 2, 2001. *See,* Exhibit 22. Dr. Glanz states that Plaintiff's depression "substantially impaired her ability to work for approximately eight months. She continues to experience some impairment in concentration that may affect her ability to work indirect-

ly.... Her depression is ongoing ... It places her at risk for further worsening of symptoms, and it has persisted despite her efforts at treatment, in excess of the average person." *Id.* Additionally, Plaintiff provided evidence that when she returned to full-time position in July of 2000, she had to begin taking Prozac again, which interfered with her ability to concentrate. *See,* Exhibit 19. In addition, she had to return to counseling due to her heightened anxiety levels. *Id.* Furthermore, the record shows that although Plaintiff was not diagnosed with depression until December 11, 1997, she began suffering from it in the Fall of 1997. *See,* Exhibits 3, 4, 24, and 25.

When viewed in the light most favorable to Plaintiff, I find a genuine issue exists as to whether Plaintiff's depression substantially limited her within the meaning of the ADA. Accordingly, I find that there is a genuine issue of material fact as to whether Plaintiff meets the first definition of a disabled person within the meaning of the ADA. *See,* 42 U.S.C. § 12102(2).[6] Therefore, I will continue with my analysis of whether Plaintiff ever requested a reasonable accommodation.

### 2. *Reasonable accommodations*

■ Defendant's final argument is that Plaintiff never made a request for a reasonable accommodation. Therefore, Defendant argues that it cannot be liable under the ADA for failing to provide a reasonable accommodation. *See,* Brief in Support, p. 16. I disagree.

To request an a reasonable accommodation, an employee need not mention the ADA or the phrase "reasonable accommodation." *Taylor v. Phoenixville School*

---

**6.** Since I have determined that a genuine issue exists as to whether Plaintiff meets the first definition of disabled person within the meaning of the ADA, there is no need for me to analyze whether Plaintiff meets the other

definitions of disabled person within the meaning of the ADA (record of impairment, 42 U.S.C. § 12102(2)(B)), or the third definition (regarded as having such an impairment, 42 U.S.C. § 12102(2)(C)).

*District*, 184 F.3d 296, 312–13 (3d Cir. 1999). It is undisputed that Plaintiff requested a medical leave of absence from Defendant on December 11, 1997. A number of courts have recognized that leave of absence for medical treatment may constitute a reasonable accommodation under the ADA. *See, Basith v. Cook County*, 241 F.3d 919, 932 (7th Cir.2001); *Humphrey v. Memorial Hospitals Assoc.*, 239 F.3d 1128 (9th Cir.2001); *Criado v. IBM Corp.*, 145 F.3d 437 (1st Cir.1998) (stating that leave may constitute reasonable accommodation); *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 782 (6th Cir. 1998) (*citing Criado, supra*); *Rascon v. U.S. West Communications, Inc.*, 143 F.3d 1324, 1334 (10th Cir.1998) (stating that "time for medical care or treatment may constitute a reasonable accommodation"); *Dockery v. North Shore Med. Ctr.*, 909 F.Supp. 1550, 1560 (S.D.Fla.1995) (recognizing that unpaid leave may constitute reasonable accommodation); *Schmidt v. Safeway, Inc.*, 864 F.Supp. 991, 996 (D.Or. 1994) (reasonable accommodation may include leave of absence for treatment). The EEOC interpretive guidance to the ADA states that a reasonable accommodation could include "additional unpaid leave for necessary medical treatment." 29 C.F.R. § 1630.2(*o*). Likewise, Department of Labor regulations announce that a reasonable accommodation may require an employer "to grant liberal time off or leave without pay when paid sick leave is exhausted and when the disability is of a nature that it is likely to respond to treatment of hospitalization." 29 C.F.R. pt. 32, app. A(b). Since, it is undisputed that Plaintiff requested a medical leave of absence on December 11, 1997, there remains a genuine issue as to whether Plaintiff's request for medical leave constitutes a reasonable accommodation in this case under the ADA. As a result, Defendant's Motion for Summary Judgment as to Count III is denied.

### ORDER OF COURT

**AND NOW,** this **25th,** day of June, 2001, after careful consideration of Plaintiff's Motion for Partial Summary Judgment (Docket No. 13), it is ORDERED that said Motion is granted. It is also ORDERED that Defendant's Motion for Summary Judgment (Docket No. 15), is denied.