**Barbara A. ZEZULEWICZ, Plaintiff,**

v.

**PORT AUTHORITY OF ALLEGHENY COUNTY, Defendant.**

**Civil Action No. 00–2370.**

United States District Court,
W.D. Pennsylvania.

Nov. 13, 2003.

---

William B. Manion, Barbara A. Zezulew-icz, Pro Se, Pittsburgh, PA, for plaintiff.

William J. Klemick, Patrick F. Kilker, Lisa M. Passarello, William L. Doepken, Vivian M. Luna, Eckert, Seamans, Cherin & Mellott, Pittsburgh, PA, for defendant.

**OPINION**

COHILL, Senior District Judge.

Plaintiff Barbara A. Zezulewicz asserts claims against defendant Port Authority of Allegheny County ("Port Authority"), her former employer, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 and 42 U.S.C. § 1983. She further alleges violations of the First Amendment, Fourteenth Amendment, 48 U.S.C. § 1985, 42 U.S.C. § 1986, 42 U.S.C. § 1988, the Family Medical Leave Act ("FMLA"), and avers various related state law claims.

We have jurisdiction over plaintiff's federal claims under 28 U.S.C §§ 1331 and 1343, and supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

Before the Court is a motion for summary judgment on all claims, filed by defendant Port Authority (Doc. 12). Plaintiff Barbara Zezulewicz has filed a brief in opposition, to which the defendant has responded.

Having now considered the parties' submissions and the applicable law, for the reasons set forth below we will grant defendant's motion in its entirety.

**I. Background**

Barbara Zezulewicz was hired by the Port Authority as a secretary to the Director of Facilities in South Hills Junction. Pl.'s Dep. at 10, 12. She began her employment in November or December 1991, with a retroactive seniority date of August 15, 1987. Pl.'s Dep. at 29, Def.'s Ex. D. The retroactive seniority date was the result of the implementation of a Consent Decree in the case of *United States of America v. Port Authority of Allegheny County,* Civil Action No. 91–1694 (E.D.Pa. 1992). In that case, the government charged the Port Authority with discrimination on the basis of race, through "job housing," a program which set aside employment positions for black applicants to the exclusion of non-black applicants. Def.'s Ex. D. The Consent Decree was entered on October 7, 1991. As a result of the Consent Decree, Zezulewicz was hired into a permanent position as a Secretary I. Pl.'s Dep. at 35. She held the position of Secretary I in the Operations/Facilities division throughout her employment with the Port Authority. Compl. at ¶ 5, Pl.'s Dep. at 35.

The plaintiff sought to upgrade her secretarial position. In a letter dated February 12, 1999, Zezulewicz complained to Gwendolyn Allen, Director of the Office of Equal Opportunity of the Port Authority, that she had applied for approximately 15 to 18 positions within the Port Authority, and could not advance into any of them. Allen Letter, Def.'s Ex. B. Plaintiff asserted that she was being subjected to discriminatory treatment in the form of retaliation for having filed two previous charges of discrimination with the EEOC. Pl.'s Dep. at 50, 51, 242; Allen Letter, Def.'s Ex. B. Plaintiff stated that she was denied a promotion because Larry Lutheran, Director of Personnel, and another member of the Personnel Department were in-

volved in the Justice Department investigation that led to the Consent Decree. Allen Letter, Def.'s Ex. B.; Pl.'s Dep. at 39.

On March 12, 1999, while Zezulewicz was on medical leave, she was offered the position of Secretary II in the Claims Department. Compl. at ¶ 8; Pl.'s Dep. at 95, 209. She was given several days to consider whether to accept the position. Zezulewicz testified at her deposition that illness prevented her from going to interview for the position, and that she could not even find out what the job entailed. Pl.'s Dep. at 95–98. Ultimately, the plaintiff requested that the job be given to the next most senior employee. Pl.'s Dep. at 98.

Port Authority secretaries are represented by Local 85, Amalgamated Transit Union ("Local 85") for collective bargaining purposes. Robin Gray was Manager of Employee Relations at the Port Authority. Her duties included administering the Collective Bargaining Agreement ("CBA") and overseeing employee discipline and grievances. Gray Decl. at ¶ 1.

As part of the collective bargaining process, the Port Authority and Local 85 agreed to a Memorandum of Understanding on January 18, 2000, that defined the secretaries' job classifications and salaries, as well as the seniority procedures for posting and filling job vacancies. Memorandum, Def.'s Ex. H.

Prior to the Memorandum, secretarial vacancies were filled based on seniority and qualifications. The Memorandum imposed an additional skills and knowledge test on secretaries who wanted a higher classification, and defined the bidding procedure for secretarial positions. Gray Decl., Def.'s Ex. F at ¶ 3. Under the Memorandum, secretaries may bid on all posted jobs to upgrade their position. All bidders take a typing and computer skills test.

The most senior employee passing the test is awarded the job for a 60–day trial period. If management determines that the employee is not qualified, the employee may return to the previous position. CBA, Def.'s Ex. G Section 903; Memorandum, Def.'s Ex. H at Section 903.

The Memorandum amended Part IX (Secretaries), sections 901–903 of the CBA. Memorandum, Def.'s Ex. H. A majority of the secretaries voted in favor of the Memorandum. Gray Decl., Def.'s Ex. F at ¶ 2; Pl.'s Dep. at 191. Zezulewicz opposed the document. Pl.'s Dep. at 183. Several employees, including the plaintiff filed a grievance with the Pennsylvania Employee Relations Board. Pl.'s Dep. at 184–188.

As part of the bargaining process leading up to the Memorandum, Local 85 and the Port Authority created a job evaluation committee to revise secretarial job descriptions. Members of the committee were Charlene Kilvanick (secretary and Union official), Sharon Lawry (Union official), Larry Lutheran (Director of Employee Relations), Bob Fulton (Assistant Business Agent for Local 85), and Robin Gray. Gray Decl., Def.'s Ex. F at ¶ 4. In late fall 1999, the job evaluation committee evaluated all of the secretaries, including the plaintiff; 13 positions were upgraded, 13 positions were not upgraded, and 2 new positions were created. Zezulewicz's position remained at Grade I. Gray Decl., Def.'s Ex. F at ¶ 4. Zezulewicz had the most seniority on 11 of the 13 upgraded positions, and on 1 of the 2 newly created positions. Def.'s Ex. I.

Plaintiff asserts that 26 of 28 Port Authority secretaries were upgraded from Secretary I to Secretary II, and that she was one of the two secretaries who was not upgraded. Compl. at ¶ 5, Pl.'s Dep. at 35.

Robyn Gray, who was on the job evaluation committee, stated that the committee

found that the plaintiff performed below the acceptable level; she could not retrieve her work products from the computer because she did not know her password, and she could not find any documents to show the committee. Gray Decl. at ¶ 5. Plaintiff testified that the committee visited her for five minutes, and that she had just returned from sick leave. Pl.'s Dep. at 188.

An exchange of emails between Lori Carter–Evans, Director of Facilities at South Hills Junction, and Robyn Gray, on January 12 and 13, 2000, addressed the upgrading of secretarial positions. It was Carter–Evans' opinion that the plaintiff's position should be upgraded along with the others, and she requested that Zezulewicz's position be upgraded to the 1A level. Def.'s Ex. E.

Zezulewicz asserts that she applied for promotions to various bargaining unit and non-bargaining unit positions, but was turned down. Pl.'s Dep. at 10, 42, 207, 209. She had the opportunity to apply for other upgraded positions but did not. Pl.'s Dep. at 213–214. She does not know if any of the employees who were hired or promoted instead of her were more or less qualified than she was, or were chosen based on unlawful criteria. Pl.'s Dep. at 44, 214–222, 231, 253, 256, 276.

She does not claim that she was not upgraded based on her age or race. Pl.'s Dep. at 35–36.

Plaintiff contends she was told that Larry Lutheran, Manager of Employee Relations, didn't like her and was out to get her as a result of her opposition to the "job housing." Compl. at ¶ 10, 11; Pl.'s Dep. at 88–89. She also asserts that Union Representative Charlene Kilvanick told her that "the reorganization is planned to force you into retirement." Compl. at ¶ 12.

Plaintiff does not blame the Union for her difficulties. She testified that the Union did not retaliate against employees for filing charges with the EEOC, that the Union did not participate in the job housing practice, and that the Union did not engage in racial, gender, or age discrimination. Pl.'s Dep. at 195–196.

Zezulewicz took three weeks of accrued sick leave in February 2000, and officially retired from the Port Authority on March 1, 2000. Pl.'s Dep. 179–180. She bid on a posted job in the claims department before that time, but was ineligible for the post after she retired on March 1. Pl.'s Dep. at 163. Several new secretarial positions were posted in February, 2000 after the upgrades were in place. Zezulewicz had enough seniority to qualify for several of these positions, but did not apply. Pl.'s Dep. at 170–171. She was not fired from her job, but argues that she was constructively discharged. Pl.'s Dep. at 155–156. She testified that "I was at the end of my rope as far as trying to advance myself." Pl.'s Dep. at 159.

Zezulewicz timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging retaliation. Def.'s Ex. C. The Commission issued a right to sue letter on August 29, 2000, and this action followed.

## II. Summary Judgment Standard

Summary judgment is proper where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Childers v. Joseph,* 842 F.2d 689 (3d Cir.1988). "Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A court

considering summary judgment must examine the entire record in the light most favorable to the nonmoving party, and draw all reasonable inferences in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must not engage in credibility determinations at the summary judgment state. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 643 n. 3 (3d Cir.1998) (*quoting Fuentes v. Perskie,* 32 F.3d 759, 762 n. 1 (3d Cir.1994)).

The moving party bears the initial responsibility for demonstrating the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. This burden may be met by showing that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S.Ct. 2548. However, once the moving party has properly supported its motion, the opponent must provide some evidence that a question of material fact remains for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To meet this burden, the non-moving party may not rest upon mere allegations, general denials, or vague statements. *Bixler v. Central Penn. Teamsters Health & Welfare Fund,* 12 F.3d 1292 (3d Cir.1993). The party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. In other words, the non-moving party must go beyond the pleadings and show, through its own affidavits or by the depositions, answers to interrogatories and admissions on file, the specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

## III. Analysis

We begin with Count II of the complaint, which alleges claims under Title VII and the FMLA. At the outset, we observe that both plaintiff's complaint and her response to the motion for summary judgment are inartfully drafted, and these claims are more fully developed than the claims raised in Counts I and III. Moreover, our disposition of the issues raised in Count II is germane to a discussion of some of plaintiff's constitutional claims.

### A. Count II: Title VII and Family Medical Leave Act Claims

Count II of the complaint is captioned "Retaliation and Discrimination, Title VII 42 U.S.C. Section 2000(e) et seq. and Medical Leave Act." Defendant argues that we must dismiss Count II in its entirety for failure to exhaust administrative remedies. Defendant further asserts that Zezulewicz has failed to make out a prima facie case of retaliation or constructive discharge, and that she has failed to state a claim under the FMLA. We will address these arguments *seriatim.*

**Exhaustion of Administrative Remedies**

■ Count II of the complaint alleges that the defendant "discriminated against and retaliated against the plaintiff because of her membership in a protected class: (a) (gender-female); and (b) age (over 40)." Compl. at ¶ 24. Plaintiff further avers that she has exhausted her administrative remedies. Compl. at ¶ 25. The Port Authority argues that she has not exhausted these remedies and that Count II must therefore be dismissed.

Under the Title VII framework, a plaintiff must exhaust the available administrative remedies by filing charges with either the EEOC or the Pennsylvania Human Relations Commission (PHRC), before filing an action under the statute. *Woodson v. Scott Paper Co.,* 109 F.3d 913, 925 (3d Cir.1997). Claims must be timely filed, and the EEOC must issue a right to sue letter if it decides not to pursue the

charges on plaintiff's behalf. 42 U.S.C. § 2000(e)–5 (1994). If a plaintiff fails to exhaust administrative remedies her claims can be dismissed. As the Court of Appeals has explained, the purpose of requiring exhaustion "is to afford the EEOC the opportunity to settle disputes through conference conciliation, and persuasion, avoiding unnecessary action in court." *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir.1996).

In determining whether Zezulewicz has exhausted her administrative remedies, we must consider whether the acts alleged in this action are "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir.1984). Zezulewicz filed a charge of discrimination with the EEOC on June 2, 2000. Def.'s Ex. C. The cause of discrimination alleged in that charge is "retaliation for having filed previous charges of discrimination...." Def.'s Ex. C. There is no indication that Zezulewicz was charging age or gender discrimination, as the complaint here avers, or that her EEOC complaint was based upon anything other than retaliation for having previously filed charges that led, at least in part, to the consent decree. There are absolutely no allegations in her EEOC charge that would put defendant Port Authority on notice that it was being sued, *inter alia,* for age or gender discrimination.

Accordingly, we will grant defendant's motion for summary judgment on Count II as to any claims of gender and age discrimination, for failure to exhaust administrative remedies.

However, the EEOC charge underlying this action does complain of retaliatory discharge, and, albeit less clearly, also raises the issue of constructive discharge. Therefore, we will not dismiss this entire count for failure to exhaust administrative

remedies, as the defendant urges us to do, but will now turn to defendant's argument that summary judgment is proper on her claims of retaliation and constructive discharge because she has failed to state a cause of action for either claim.

## Retaliation in Violation of Title VII

The Port Authority argues that Zezulewicz has failed to establish a prima facie case of discriminatory retaliation because the defendant followed the collective bargaining agreement with respect to upgrading positions and seniority rights. Defendant further contends that Zezulewicz has failed to establish a prima facie case of retaliation with regard to non-bargaining unit positions, because she has not established that the Port Authority took any adverse action against her.

Under Title VII, it is an unlawful employment practice for an employer:

> (1) to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice ... or because he has made a charge under this subchapter.

42 U.S.C.A. § 2000e–3(a).

However, an employer may "apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system" without violating Title VII. 42 U.S.C. § 2000e–2(h).

■ To set forth a prima facie case of retaliation, a plaintiff must show that (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link between the protected conduct and the adverse action. *Charlton v. Paramus Bd. of Ed.,* 25 F.3d 194, 201 (3d Cir.1994). The gist of plaintiff's retaliation claim is that the Port Authority failed to upgrade her position or promote her to higher positions because she had filed previous charges of discrimi-

nation with the EEOC regarding job housing.

(i)

■ At her deposition, Zezulewicz testified that she had applied for a number of jobs within the bargaining unit but had not been hired for any of them. She could specifically recall two positions, a secretarial position in the claims department, which she turned down because it was offered to her while she was out on sick leave, and a register clerk position. Pl.'s Dep. at 209, 213, 215. She testified that she did not know the qualifications of those who were hired for those positions. Pl.'s Dep. at 214. She also stated that she thought she had applied for ten to fifteen bargaining unit jobs over the years, but that she didn't get them because of seniority. Pl.'s Dep. at 213.

With regard to upgrading her position, the evidence shows that the upgrading of some of the secretarial positions was the product of the collective bargaining process. Memorandum, Def.'s Ex. H. This changed the way in which secretarial vacancies were filled. Prior to the Memorandum, vacancies were filled based on seniority and individual qualifications; the Memorandum imposed an additional typing and computer skills test on all bidders. Gray Decl., Def.'s Ex. F at ¶ 3. All secretaries could bid on posted jobs, and the most senior employee passing the test was awarded the position. CBA, Def.'s Ex. G Section 903; Memorandum, Def.'s Ex. H. at Section 903. Thus, even though the plaintiff's specific secretarial position was not upgraded by the joint union-management committee, she was eligible to bid on other jobs, provided that she take the necessary typing and computer skills test. She opposed the Memorandum, and voted against it. Pl.'s Dep. at 183.

The plaintiff's brief in opposition to summary judgment does not address either the Memorandum or the CBA. Nor does it discuss any specific positions she may have applied for within the bargaining unit. However, Zezulewicz testified at her deposition that she did not believe that the union discriminated against anyone in retaliation for filing a complaint with the EEOC or for complaining through the Port Authority's internal EEO process. Pl.'s Dep. at 195.

The undisputed facts show that decisions to fill open positions within the bargaining unit and on upgrading individual secretarial positions were made as part of the collective bargaining process, and represent a bona fide merit system. The final Memorandum, too, was part of this process. An employer may "apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system" without violating Title VII. 42 U.S.C. § 2000e–2(h). The system put in place pursuant to the CBA was applied equally to all members of the bargaining unit. Accordingly, we find that any action taken by the defendant pursuant to the collective bargaining process, even if it had a detrimental impact on the plaintiff, was not retaliatory and did not violate Title VII. This includes the jobs within the bargaining unit that Zezulewicz testified she applied for but did not get.

(ii)

■ Turning to the non-bargaining unit positions plaintiff states she applied for but did not get, she bears the burden, as part of establishing her prima facie case, of showing that the Port Authority took adverse employment actions against her with respect to these jobs. Defendant argues that she has not established an adverse employment action.

Zezulewicz's brief opposing summary judgment does not present facts that establish a prima facie case of retaliation. She simply assumes that she has set forth a prima facie case of retaliation, and proceeds to address pretext. To survive summary judgment, however, she must first set forth a prima facie case of retaliation, and this she has not done. It is undisputed that the plaintiff filed two charges with the EEOC. Pl.'s Dep. at 50–51, 242. It is also undisputed that she was not fired, laid off, demoted, or transferred from her secretarial position. Plaintiff's brief does not present any information regarding non-bargaining unit jobs. Since she has failed to present any specific evidence that she suffered an adverse employment action when she applied for any non-bargaining unit positions, she has failed to establish a prima facie case of retaliation, and therefore we will grant defendant's motion for summary judgment as to this issue.

**Constructive Discharge in Violation of Title VII**

The Port Authority argues that we must grant summary judgment on this claim because Zezulewicz has failed to show that her inability to upgrade her secretarial position resulted in, or from, intolerable working conditions.

Zezulewicz has not offered direct evidence that the Port authority discriminated against her. Therefore, we analyze her constructive discharge claim under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that rubric, a plaintiff offering indirect evidence of discrimination must first set out a prima facie case of employment discrimination. A prima facie case is established where the plaintiff (1) is a member of a protected class, (2) is qualified for a position, and (3) suffers an adverse employment decision, and (4) that

others outside of the protected class were treated more favorably. *Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 411 (3d Cir.1999). If the plaintiff cannot do so, the defendant is entitled to judgment as a matter of law.

If the plaintiff establishes a prima facie case, this raises a presumption of discrimination. The burden then shifts to the defendant, who must produce some evidence of a legitimate, nondiscriminatory reason for the adverse employment action. Once it does so, the plaintiff must prove by a preponderance of the evidence that the proffered reason was merely a pretext for discrimination. *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 n. 4 (3d Cir.1999). To defeat summary judgment, the plaintiff must proffer evidence "from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Showalter v. Univ. of Pittsburgh Medical Center*, 190 F.3d 231, 235 (3d Cir.1999); *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir.1997) (en banc).

A plaintiff asserting a violation of Title VII may establish the "adverse employment action" element of a prima facie case by showing that she was constructively discharged. *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 973–74 (3d Cir.1998). When considering a claim of constructive discharge, the court must determine "whether a reasonable jury could find that the [employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 (3d Cir.2001). As a threshold matter, then, the plaintiff must show that the employer condoned acts of discrimination.

■ We agree with the defendant that Zezulewicz simply does not allege the sort of intolerable conditions necessary to support her claim that she was constructively discharged. Her responsive brief states that "she was told her position was going to be eliminated and constructively forced into retirement." Pl.'s Br. at B. Plaintiff then cites to various portions of her own deposition testimony for this proposition. No other evidence supports her supposition. Furthermore, even if her position had been eliminated, she had enough seniority to bid on a number of other positions. Several new secretarial positions were posted in February, 2000 after the upgrades were in place. Zezulewicz had enough seniority to qualify for several of these positions, but chose not to apply. Pl.'s Dep. at 170–171. Moreover, she bid on a posted job in the claims department before taking her accrued leave, although she became ineligible for the post after she retired. Pl.'s Dep. at 163.

■ An employee's subjective perceptions do not govern a claim of constructive discharge. *Duffy*, 265 F.3d at 169 (*quoting Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir.1992)). Rather, the test we must apply is an objective one: whether a reasonable person under similar circumstances would have felt compelled to resign. We find that the plaintiff has failed to establish that she suffered an adverse employment action in that she was constructively discharged, and therefore she has failed to make out a prima facie case of discrimination. We will grant summary judgment on this claim, and will dismiss her allegations of constructive discharge as a matter of law.

### Family Medical Leave Act

The crux of plaintiff's FMLA claim is that she was offered a position as Secretary II in the Port Authority claims department, but was forced to make a decision overnight in violation of the FMLA. Compl. at ¶ 8. The Port Authority argues that we must grant summary judgment because Zezulewicz has failed to establish a prima facie case of retaliation in violation of the FMLA.

■ The FMLA makes it unlawful for an employer to interfere with an employee's rights under the statute, or to retaliate for the exercise of these rights. 29 U.S.C. § 2615(a); *Wilson v. Lemington Home for the Aged*, 159 F.Supp.2d 186, 194 (W.D.Pa.2001). To state a cause of action under the FMLA, an employee must show that (1) she is protected by the Act; (2) she suffered an adverse employment action; and (3) a causal connection between the two. *Id.* at 195.

■ We agree with the Port Authority that there is no evidence that the plaintiff suffered an adverse employment action while on leave. It is undisputed that Zezulewicz was offered a secretarial position in the claims department while she was on medical leave. Pl.'s Dep. at 96. She testified that she did not want to accept the job without actually interviewing for it to learn what it entailed, and the Port Authority would not wait until she returned to work to fill the position. Pl.'s Dep. at 96–103. She declined to accept the job, and the position was awarded to the person with the next highest seniority. Pl.'s Dep. at 98. It is undisputed that plaintiff's own job was not endangered by her medical leave.

Zezulewicz argues that the defendant retaliated against her for taking leave by offering her a job without reasonable time to decide whether to take it. Pl.'s Br. at B (unpaginated). However, we must conclude that being offered another position while on medical leave, even with what she perceived as an inadequate length of time

to make a decision, is not the sort of adverse employment action that would violate the FMLA. Thus, plaintiff has failed to establish a prima facie case of violation of the FMLA, and we will grant defendant's motion for summary judgment on this claim.

For the foregoing reasons, then, neither plaintiff's Title VII claims nor her claims for violation of the FMLA can survive summary judgment. Accordingly, we will grant defendant's motion and dismiss Count II in its entirety.

### B. Count I: Constitutional and Civil Rights Claims

Defendant has also moved for summary judgment on each of the claims raised in Count I of plaintiff's complaint. Count I alleges violations of the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988. Zezulewicz characterizes these as "political discrimination claims; equal protection, liberty, and due process claims; civil conspiracy claims; and the right to be free from retaliation claims (.)" Compl. at ¶ 18. We will consider defendant's motion for summary judgment as to each of these claims in turn.

**First Amendment**

The Port Authority argues that summary judgment is proper on this claim because Zezulewicz has failed to set forth a prima facie case of retaliation under the First Amendment.

██ To state a claim for retaliation for exercising rights protected by the First Amendment to the United States Constitution, plaintiff must (1) show that she worked for a public agency; (2) describe the constitutionally protected conduct; and (3) show that her speech activity was a substantial or motivating factor in the defendant's retaliatory action. *Stephens v. Kerrigan,* 122 F.3d 171, 176 (3d Cir.1997).

██ Specifically, the Port Authority contends that Zezulewicz's pleadings fail to establish the second and third prongs of this cause of action. Making all inferences in favor of the plaintiff, however, we find that she has described the constitutionally protected conduct so as to establish the second element of her prima facie case. We understand the protected conduct to be the filing of the EEOC complaints that, at least in part, resulted in the Consent Decree. The charge of discrimination filed with the EEOC in this case sets forth her arguments in this regard. Def.'s Ex. C. Similarly, her deposition testimony explains that she alleges retaliation for complaining of defendant's employment practices. Pl.'s Dep. at 36, 39.

She has not, however, met her burden of showing that this activity was a substantial or motivating factor in the Port Authority's failure to promote her or to upgrade her position. Our conclusion in Part A, *supra,* that the procedure by which secretarial positions were upgraded and filled was the product of collective bargaining, is also applicable to plaintiff's First Amendment retaliation claim. As we have previously stated, plaintiff's brief in opposition to summary judgment does not address the CBA. Furthermore, Zezulewicz testified that she did not believe that the union retaliated against her. Pl.'s Dep. at 195. Thus, with respect to any union positions and to the decisions to upgrade certain secretarial positions and require new skills testing, both of which were governed by the CBA, plaintiff has not shown a genuine issue of material fact sufficient to preserve her First Amendment claim from summary judgment.

Turning to any non-union positions for which the plaintiff may have applied, again we find that she has not met her burden to defeat summary judgment. Zezulewicz

has not pointed to any specific non-union positions for which she applied, nor to conduct from which a reasonable jury could find that she was denied these positions, in part, because of her protected speech.

Accordingly, we find that the plaintiff has failed to establish a prima facie case of retaliatory discharge in violation of the First Amendment, and that this claim cannot withstand defendant's motion for summary judgment. We will therefore grant summary judgment as to plaintiff's First Amendment claim.

**Fourteenth Amendment Claims**

The Fourteenth Amendment prohibits state deprivations of life, liberty, or property without due process of law. When analyzing these claims, the court must first ask whether the asserted interests are protected by the Fourteenth Amendment, and, if so, what procedures constitute "due process of law." *Robb v. City of Philadelphia*, 733 F.2d 286, 293 (3d Cir.1984) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). The amendment further provides that no state shall deprive an individual of the equal protection of the laws. An equal protection analysis asks whether the plaintiff is a member of a protected class, and has been treated differently from persons who are similarly situated. *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir.2003).

Zezulewicz avers violations of her property and liberty interests, as well as her due process rights. The Port Authority argues that we must grant summary judgment and dismiss each of these claims, because the plaintiff has failed to establish a prima facie case on any of her Fourteenth Amendment claims.

### Property Interest

Count I broadly states that Zezulewicz seeks relief for violation of due process. Compl. at ¶ 17–18.

To have a property interest in an employment benefit, such as a promotion or another position, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). A property interest is not created by the Constitution, but must have an independent basis such as state law. *Id.; See also Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Under Pennsylvania law, a public employee has no claim of entitlement to continued employment in the same position or to a promotion. *Robb v. City of Philadelphia*, 733 F.2d 286, 292–93 (3d Cir.1984). These decisions are discretionary with the employer. *Id.*

Plaintiff's brief in opposition to summary judgment states that "Federal due process requires a timely opportunity to clear one's name." Pl.'s Br. at C (unpaginated). We have difficulty analyzing this claim on summary judgment, since plaintiff offers no further discussion or explanation of its basis. There are simply no facts from which we can evaluate whether or not she had an opportunity to clear her name. Indeed, there is no evidence that Zezulewicz's name was tarnished.

To the extent that plaintiff may be alleging a due process violation for defendant's failure to promote her, or for the failure to upgrade her secretarial position, we reiterate that these decisions were made in accordance with a bargained-for CBA. Moreover, Zezulewicz was not demoted, or dismissed. She was not denied an opportunity to apply for other positions. She retained her position and salary until she retired. She may have desired an upgraded position, but she had no

entitlement to it. Accordingly, since there are no facts from which a jury could find that the plaintiff's property interest was violated, we will grant summary judgment on this issue.

## Liberty Interest

Zezulewicz also alleges that she was defamed and stigmatized in the course of her forced separation from public employment. Compl. at ¶ 19. Her brief explains that her liberty interest was violated because she was denied a name-clearing interview. Pl.'s Br. at C (unpaginated). The Port Authority argues that there are no facts from which a reasonable fact-finder could conclude that Zezulewicz was deprived of a liberty interest under the Fourteenth Amendment, and we agree.

The liberty interests protected by procedural due process are broad in scope. *Robb v. City of Philadelphia*, 733 F.2d 286, 293 (3d Cir.1984) (citing *Stanley v. Illinois*, 405 U.S. 645, 647–49, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)). However, "stigma to reputation alone, absent some accompanying deprivation of present or future employment," is not a protected liberty interest. *Robb*, 733 F.2d at 294 *(citing Roth*, 408 U.S. at 574, 92 S.Ct. 2701). An employment action implicates a liberty interest only if it (1) is based on a charge that might seriously damage the employee's standing and associations in the community, including dishonesty or immorality, or (2) if it "imposes a stigma of disability that forecloses his freedom to take advantage of other employment opportunities." *Id. (citing Roth*, 408 U.S. at 573, 92 S.Ct. 2701). Furthermore, the allegedly stigmatizing information must have been published or disseminated by the employer to the public. *Chabal v. Reagan*, 841 F.2d 1216, 1223 (3d Cir.1988) *(citing Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)).

We must repeat that there are no facts from which we may conclude that plaintiff's name was tarnished, or that she was denied a name-clearing interview. Furthermore, there are no facts showing that Zezulewicz was stigmatized, or that any stigmatizing information was disseminated to the public. Since there are no facts from which a reasonable factfinder could conclude that the Port Authority's conduct in any way violated the plaintiff's constitutional protected liberty interest, we will grant summary judgment and dismiss this claim.

## Equal Protection

Plaintiff also asserts that defendant's "policy served no legitimate interest" and thus violated her right to equal protection under the Fourteenth Amendment. Pl.'s Br. at B (unpaginated). We understand the policy at issue to be the new test requirements and what plaintiff calls "defendant's reorganization," which was the bargained-for upgrading of some secretarial positions and the typing and computer skills tests required for bidding on the upgraded jobs.

The Port Authority argues that Zezulewicz has failed to make out a prima facie case of an equal protection violation, because she has not shown that she was treated differently because of her membership in a protected class.

To state a claim for an equal protection violation, a plaintiff must present evidence that she has been treated differently from persons who are similarly situated. *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir.2003) (citing *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). We agree with the defendant that plaintiff has provided no evidence from which we may find an equal protection violation. She does not allege membership in a protected class. She does not claim that de-

fendant failed to upgrade her position because of her age or her race. Pl.'s Dep. at 35–36. Although she characterizes the job upgrades and new testing requirements as a discriminatory "policy," the record is devoid of any evidence that these bargained-for changes to the CBA were in any way impermissibly discriminatory. Nor is there any evidence that Zezulewicz was treated any differently than any of the other secretaries. Moreover, she testified that she did not know if any of the other Port Authority employees who were hired or promoted instead of her were more or less qualified than she was. Pl.'s Dep. at 44.

Zezulewicz further argues that defendant's policy violates equal protection because it was not used before she made her complaints. However, the undisputed facts show that the changes in secretarial positions and the bidding requirements were bargained-for and part of the CBA, and that this new process applied, through the CBA, equally to all Port Authority secretaries.

As plaintiff has failed to state a prima facie case of an equal protection violation, we will grant summary judgment as to this claim.

### Section 1981

42 U.S.C. § 1981 may provide the basis for a claim of employment discrimination or retaliation. However, its scope is limited to instances of race discrimination. *Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). There are no allegations of race discrimination in this case, and plaintiff testified at her deposition that she does not claim she was not upgraded based upon her race. Pl.'s Dep. at 35–36. Therefore we will dismiss plaintiff's claim as to § 1981 for failure to state a prima facie case without further discussion.

### Section 1983

Count I also alleges a claim for violation of plaintiff's rights under 42 U.S.C. § 1983. The Port Authority argues that Zezulewicz has failed to make out a prima facie case of a § 1983 violation.

Section 1983 provides a civil cause of action for deprivation of the "rights, privileges, or immunities secured by the Constitution and laws," under color of state law. 42 U.S.C. § 1983. Section 1983 does not create substantive rights. Rather, it provides a remedy where rights created by federal law have been violated. *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir.1995) (*citing Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). To establish a prima facie case under § 1983, a plaintiff must demonstrate that (1) she was deprived of a federal right; and (2) the person who deprived her of that right was acting under color of state law. *Groman*, 47 F.3d at 633 (citing *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)). This second prong is a requirement that state action be part of the claim.

Defendant concedes that the Port Authority is a state actor, but argues that Zezulewicz has not established the deprivation of a federal right. We agree.

Plaintiff does not specify the specific deprivation of right that supports her § 1983 claim. She simply avers that the alleged constitutional violations in Count I "were carried out by sufficiently high-ranking officials, to constitute policy, custom, or practice." Compl. at ¶ 20. She further asserts that defendant's actions "are therefore part of policy, official, or unofficial, and not a departure from any policy of the Defendant political subdivision" and that defendant's actions "are therefore a final government policy in re-

gards to such actions, as said act was essentially a final act." Compl. at ¶¶ 21–22.

Count I asserts violations of equal protection, due process, and liberty interest, which could support a claim under § 1983. However, since we have concluded that defendant should be granted summary judgment on each of the plaintiff's constitutional claims, plaintiff cannot satisfy the first element of a § 1983 violation. Accordingly, as there are no facts from which a jury could find that a federal right has been violated, we will grant defendant's motion for summary judgment as to this claim.

## Section 1985

42 U.S.C. § 1985 provides a civil remedy against those who conspire to deprive an individual of equal protection or equal privileges and immunities under the law. Defendant contends that Zezulewicz has failed to establish discriminatory animus and therefore this claim must be dismissed.

Once again, it is difficult to discern the basis of the claim or the plaintiff's supporting argument from the complaint, and her brief in response to defendant's motion for summary judgment does not address it. Nor does she indicate which subsection of § 1985 supports her claim.

Section 1985(2) prohibits conspiracy to obstruct justice with the intent to deny equal protection of the laws. 42 U.S.C. § 1985(2). A claim brought under this subsection must include allegations that the conspiracy involved " 'racial, or ... otherwise class-based, invidiously discriminatory animus.' " *Davis v. Township of Hillside*, 190 F.3d 167, 171 (3d Cir.1999) (*quoting Kush v. Rutledge*, 460 U.S. 719, 725, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983)).

The only other applicable subsection, § 1985(3), also requires that there be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Carpenters v. Scott*, 463 U.S. 825, 834, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) (*quoting Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). Section 1985(3) applies to private conspiracies as well as those where state action is asserted. *Carpenters*, 463 U.S. at 833, 103 S.Ct. 3352. To state a cause of action under this subsection, a plaintiff must show (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of privilege of citizenship. *Id.* at 828–29, 103 S.Ct. 3352. The Supreme Court has interpreted the second element to require a showing of discriminatory animus. *Id.* (citing *Griffin*, 403 U.S. at 102, 91 S.Ct. 1790). Section 1985(3) does not create any substantive rights, but serves only as a means of vindicating federal rights and privileges which have defined elsewhere. *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 805 (3d Cir.2001).

We agree with the defendant that plaintiff's § 1985 claim must fail because she has failed to show discriminatory animus. As we concluded when rejecting plaintiff's equal protection claims, she has not alleged membership in a protected class. Moreover, she does not claim that her secretarial position was not upgraded because of her age or her race. Pl.'s Dep. at 35–36. There is no evidence from which a reasonable jury could conclude that impermissible discriminatory animus motivated any of the Port Authority's employment decisions that affected the plaintiff. Furthermore, to the extent that Zezulewicz

contends that the Defendant had used the same "reorganization" conspiracy to "weed-out" and retaliate against a "common group of employees" (Compl. at ¶ 14), we again emphasize that what the plaintiff characterizes as defendant's reorganization took place pursuant to the CBA which controlled secretarial hiring, assignment, and promotions at the Port Authority.

Accordingly, plaintiff's § 1985 claims shall be dismissed because she has failed to make out a prima facie case.

**Section 1986**

Section 1986 provides for liability for neglecting to prevent civil rights violations where (1) the defendant had actual knowledge of a conspiracy in violation of § 1985; (2) defendant had the power to prevent or aid in preventing the violation; (3) defendant neglected or refused to prevent the § 1985 conspiracy; and (4) a wrongful act was committed. 42 U.S.C. §§ 1985, 1986.

Since Zezulewicz has failed to establish a prima facie case of conspiracy in violation of § 1985, she cannot succeed on this claim and summary judgment will be granted.

**Section 1988**

Section 1988 gives the Court the discretion to award reasonable attorneys fees to a plaintiff who successfully pursues civil rights claims under §§ 1981, 1982, 1983, 1985, and 1986. In this case, Zezulewicz has not succeeded on these claims and we have concluded that summary judgment must be granted as to each of them. Accordingly, there is no basis for an award of attorneys fees under § 1988, and we will dismiss this claim.

### C. Count III: Plaintiff's State Law Claims

In Count III of the Complaint, plaintiff broadly "invokes the federal court's jurisdiction over Pennsylvania Common Law, Tort law, Constitutional Law, State Civil Rights, and the Pennsylvania Human Re-

lations Act." Compl. at ¶ 28. Plaintiff's responsive brief states, without elaboration, that these claims are asserted under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S.A. § 955 *et seq.*, and Article I of the Pennsylvania Constitution. The Port Authority argues that we must grant summary judgment as to each of plaintiff's state law claims, because they are bare allegations without any evidentiary support.

We are mindful of our obligation to consider our basis of subject matter jurisdiction over Zezulewicz's state law claims. That jurisdiction is governed by 28 U.S.C. § 1367, the supplemental jurisdiction statute, which permits federal courts to exercise subject matter jurisdiction over matters they would normally be precluded from entertaining so long as the supplemental matters involve or relate to the same controversy as to matters properly before the federal court. *Peter Bay Homeowners Ass'n, Inc. v. Stillman,* 294 F.3d 524, 534 (3d Cir.2002).

For a court to exercise supplemental jurisdiction over state law claims, the federal claims must have substance sufficient to confer subject matter jurisdiction on the court, the state and federal claims must derive from a common nucleus of operative fact, and, if considered without regard to their state or federal character, a plaintiff's claims must be such that she would ordinarily be expected to try them all in one judicial proceeding. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). We have no difficulty finding that this case meets all three requirements, and that we have the power and the discretion to hear the state law claims presented in the complaint. Claims raised under Title VII are sufficient to confer jurisdiction on this Court, and plaintiff's claims are all based

on the theory that the Port Authority failed to promote her or to upgrade her secretarial position because she had filed complaints with the EEOC. In other words, her federal claims and state law claims arise from the same nucleus of operative facts and are part of the same case and controversy.

Nevertheless, having awarded summary judgment to the Port Authority on plaintiff's federal claims, we could certainly dismiss the state law claims without prejudice for lack of subject matter jurisdiction. 28 U.S.C. § 1367(c). However, we are not required to do so. The plain language of the statute provides that "[t]he district courts may decline to exercise supplemental jurisdiction ... if ... (3) the district court has dismissed all claims over which it has original jurisdiction...." 28 U.S.C. § 1367(c). Once it is determined that a court could have exercised supplemental jurisdiction over these matters, its decision to exercise that jurisdiction is discretionary. See *New Jersey Turnpike Authority v. PPG Ind., Inc.*, 197 F.3d 96, 113 (3d Cir.1999); 28 U.S.C. § 1367(c). Thus § 1367(c) provides us with the discretion to decide whether or not to consider Zezulewicz's state law claims.

To be sure, where the claim over which the district court has original jurisdiction is dismissed before trial, the district court generally will decline to decide the state law claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so. *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995). We are satisfied that these conditions have been met in this case, and will therefore exercise our discretion to decide the motion for summary judgment as to plaintiff's state law claims. We are not at an early stage in these proceedings, and the parties have gone through extensive discovery and depositions. Moreover, insofar as the complaint alleges violations of the Pennsylvania Human Relations Act ("PHRA"), we note that discrimination claims brought under the PHRA are analyzed under the same standards as their federal counterparts. *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir.1998). Thus our determination that defendant's conduct did not violate Title VII would cause us to grant summary judgment on the same claims under the PHRA.

In addition, exercising our discretion to consider the remainder of plaintiff's claims does not require us to decide any novel issues of state law. Indeed, since plaintiff's brief does not even attempt to defend her state law claims against summary judgment, we need not apply state law at all. For this reason, the *Gibbs* pronouncement that courts should avoid needless decisions of state law, which frequently underlies a judicial decision not to exercise its supplemental jurisdiction, is completely absent from this case. *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130.

To reiterate the applicable legal standard, to survive a properly supported motion for summary judgment Zezulewicz must point to specific facts showing that a genuine issue remains for trial on each of the claims listed in Count III. Fed.R.Civ.P. 56(e). Her burden is to indicate sufficient cognizable evidence to create material issues of fact concerning every element she will be required to prove at trial. *Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994). She has not met this burden. She has made absolutely no effort to set forth a prima facie case on any state law claim. Her brief opposing summary judgment fails to address her state law claims in any respect. She has not pointed to disputed issues of material fact on any of these claims.

Therefore, as the plaintiff has made no attempt to withstand defendant's motion for summary judgment as to her state law claims, we will grant defendant's motion and dismiss Count III in its entirety.

## IV. Conclusion

For the foregoing reasons, defendant's motion for summary judgment shall be granted in its entirety. An appropriate Order follows.

### ORDER

AND NOW, to-wit, this 13th day of November, 2003, for the reasons set forth in the accompanying Opinion, it is hereby ORDERED, ADJUDGED, and DECREED that defendant's motion for summary judgment (Doc. 12) be and hereby is GRANTED IN ITS ENTIRETY.

Judgment be and hereby is entered in favor of the defendant, Port Authority of Allegheny County, and against the plaintiff, Barbara A. Zezulewicz, and the Clerk of Court be and hereby is directed to mark this case as "closed."